# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| **DION EDWARD RIDDLE,** | ) | |
| **#288058,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO. 2:19-CV-783-MHT-CSC** |
| | ) | |
| **ALABAMA DEPT. OF** | ) | |
| **CORRECTIONS, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>RECOMMENDATION OF THE MAGISTRATE JUDGE</u>

### I.      INTRODUCTION

Plaintiff Dion Edward Riddle, an indigent state inmate, initiated this 42 U.S.C. § 1983 action in October 2019. Doc. 1. He alleges that, while confined at Red Eagle Honor Farm in 2018, Defendant Officers Deason and King used excessive force against him while Defendant Officer Franklin watched, refused to intercede to protect him, and refused his request for medical attention. Doc. 1-1 at 1. He further alleges that, upon his subsequent transfer to Elmore Correctional Facility, he reported the assault to Defendant Officers Hudson and McKee, who failed to investigate the matter. Plaintiff also names the Alabama Department of Corrections ("ADOC") as a defendant.[1] He does not state whether he sues Defendants in their individual or official capacities. He seeks monetary damages and a jury trial. Doc. 1 at 1, 4.

---

[1] The State and its arms are not "persons" subject to suit under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989). The ADOC is an arm of the State of Alabama. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (recognizing that the Alabama Board of Corrections is a part of the State); *see* Ala. Code § 14–1–1.1 (providing that the ADOC is the successor to the Board of Corrections). Accordingly, the ADOC should be DISMISSED as a defendant.

Defendants filed a Special Report (Doc. 48), which includes evidentiary materials such as affidavits, prison documents, and medical records, addressing the claims presented by Plaintiff. In their Report, Defendants Deason and King deny they used excessive force against Plaintiff; Defendant Franklin denies witnessing an assault and failing to take Plaintiff for medical attention; and Defendants Hudson and McKee deny that they violated Plaintiff's constitutional rights in any manner. After reviewing the Special Report and exhibits, on April 13, 2020, the Court issued an order requiring Plaintiff to file a response to the Report supported by affidavits or statements made under penalty of perjury and other evidentiary materials. That order specifically cautioned:

> **[U]nless within fifteen (15) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for Plaintiff to file a response] and **without further notice to the parties** (1) treat the special report and any supporting evidentiary materials as a . . . motion for summary judgment, and (2) after considering any response as allowed by this order, rule on the dispositive motion in accordance with the law.

Doc. 54 at 3. Plaintiff filed a response as directed. Doc. 57.

Upon consideration of the parties' submissions, and pursuant to the directives of the April 13 order, the undersigned Magistrate Judge now treats Defendants' Special Report as a motion for summary judgment. For the reasons set forth below, the undersigned RECOMMENDS that summary judgment be GRANTED in favor of Defendants on all of Plaintiff's claims.

## II.    SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for "summary judgment if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ.

P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson*, 477 U.S. at 248). "An issue is 'material' if it might affect the outcome of the case under the governing law." *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Id.* at 322–23.

Once the movant has satisfied this burden, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. In doing so, and to avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The parties must support their assertions

3

"that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[], admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B).

If the nonmovant "fails to properly address another party's assertion of fact as required by Rule 56(c)," then the Court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)–(3).

"In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998–99 (11th Cir. 1992) (citation omitted). Instead, generally, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 999 (citations and internal quotations omitted). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citation omitted). Furthermore, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990); *see also Anderson*, 477 U.S. at 249–50 ("If the evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted.") (internal citations omitted).

4

### III.   RELEVANT FACTS[2]

In his Complaint[3], Plaintiff alleges that, on August 29, 2018[4], between 9:00 a.m. and 2:00 p.m., he was escorted to the back gate at Red Eagle Honor Farm and assaulted by two correctional officers, Defendants Deason and King. Doc. 1 at 2–3. The assault resulted in an unidentified "injury that could be a life long issue causeing [sic] [him] mental issues along with physical issues." *Id*. at 3. After the assault, he "was denied medical treatment by [Defendant] Franklin." *Id*. Plaintiff then states that Defendants Hudson and McKee "withheld calling I & I to investigate [his] matter." *Id*. He further states that he later found out "that one of [these Defendants] use to work for him if not both" and that "he withheld such information knowing [Plaintiff] was assaulted." *Id*. It is unclear to whom Plaintiff is referring in that allegation, and the Complaint contains no further allegations or details in support of his claims.

In a separate Statement of Facts[5], Plaintiff alleges the following:

---

[2] The "facts" set forth herein are merely for purposes of resolving summary judgment and may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("[W]hat we state as 'facts' . . . for purposes of reviewing the rulings on the summary judgment motion [] may not be the actual facts.") (citation omitted).

[3] The Eleventh Circuit has held that "pleadings verified under § 1746 [by attesting to the truth of the factual assertions under penalty of perjury] are admissible (and may substitute for sworn affidavits) on summary judgment." *Walker v. Poveda*, 735 F. App'x 690 (11th Cir. 2018). In his Certificate of Service at the end of his Complaint, Plaintiff states, "I . . . do hereby certify under the penalty of perjury that the foregoing if [sic] true and correct service upon the Middle District Court For The Middle District of Alabama[.]" Doc. 1 at 4. Although it is unclear if Plaintiff is attesting to the truth of the factual assertions in the Complaint, the Court will construe Plaintiff's *pro se* pleading liberally and treat the Complaint as properly verified.

[4] The Complaint states that the alleged incident took place on September 29, 2018. Doc. 1 at 2. However, Plaintiff later states in his separate Statement of Facts that it occurred on August 29, 2018. Doc. 1-1 at 1. The record as a whole demonstrates that the August date is correct.

[5] As will be addressed below, Plaintiff's Statement of Facts is not properly verified under § 1746. However, the allegations therein are nevertheless relevant to the Court's summary judgment analysis.

> [O]n August [sic] 29, 2018. while @ thus [sic] Red Egeal [sic] Hon: Farm . . . was escorted [sic] from the shift office to what is knowned [sic] as the "BACKGATE" . . . by sgt: Mr. Deason and Correctional officer Mr. Curtis King. Herein I, was ordered by said above named Sgt: Mr. Deason to sit down in "THE CHAIR"! and I did follow his order with handcuff's [sic] on I set., [sic] herein they him and Corr: Mr. C. King started hitting me in the back of my head along my liftside [sic] if [sic] my face for about a toll [sic] of 5 to 10 mins that this assult [sic] happen on me with corr: Franklin just looking on . . . so after this By me sliding down from the low chair my "<u>RIGHT LEG</u>" upper thigh was hearting [sic] badly [sic] and I ask Corr: Franklin For some medicial [sic] treatment scense [sic] he observed the insident [sic] and his reply was no[.]

Doc. 1-1 at 1. Later that same day, Plaintiff was transferred from Red Eagle Honor Farm to Elmore Correctional Facility. Doc 48-1 at 2. Plaintiff alleges that, at some point thereafter, he informed Defendants Hudson and McKee about the assault, and they did not investigate the matter. Doc. 1-1 at 1–2.

Plaintiff also attached to his Complaint a Disciplinary Report against him for fighting with a fellow inmate, Mangum. Docs. Docs. 1-3; 1-4; 1-5. The Disciplinary Report indicates that, on August 29, 2018, at approximately 9:45 a.m., Plaintiff admitted to Defendant King that he had been involved in a physical altercation with inmate Mangum, and Defendant Deason observed "bruising and red marks" on the left side of Plaintiff's face from the altercation. *Id*. Plaintiff testified at his August 31, 2018 Disciplinary Hearing, presided over by Defendant Hudson, that, although he had indeed admitted to the incident, he and inmate Mangum were merely "horseplaying." Doc. 1-4. Defendant McKee approved Plaintiff's guilty verdict. Doc. 1-5.

Both parties submitted various medical records in support of their claims, all of which are undisputed. The medical records demonstrate that, upon his arrival at Elmore Correctional Facility, Plaintiff was given a routine medical screening. Doc. 48-5 at 149. At that time, he

reported feeling "OK" and did not report any injuries. *Id*. More than eight months later, on May 14, 2019, Plaintiff filled out a partially completed[6] Sick Call Request to Elmore Correctional Staff claiming that he was "having problems with [his] (upper)-right leg musel [sic] that occurred from thus [sic] insident [sic] at the Red Egel [sic] Hon; Farm back in Aguest [sic] 2018 when [he] was assulted [sic] by said officers." Doc. 1-8. Approximately four months after that, on September 3, 2019, he submitted another Sick Call Request to Loxley Correctional Staff again claiming issues with his "upper-right thigh musel [sic] that occurred from an insident [sic] while @ Red Eagle Hon; Farm back in August 2018 when [he] was in an altercation/or being assulted [sic] by said officers." Doc. 1-9. On September 16, 2019, Plaintiff was given an ACE bandage to use "as needed." Doc. 48-5 at 102. Then, on October 21, 2019, Plaintiff again reported to Loxley medical staff that his right leg hurt. Doc. 48-5 at 119. When asked what caused the pain and how long the pain had been present, Plaintiff indicated that he had injured his leg while walking at Loxley. *Id*. Plaintiff was given ibuprofen. *Id*.

## IV.   DISCUSSION

### a.   Official Capacity Claims

To the extent Plaintiff seeks monetary damages from Defendants in their official capacities, he is not entitled to such relief. Official capacity suits are "in all respects other than name . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As such, a state employee may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst*, 465 U.S. at 100, or Congress has abrogated the

---

[6] The document is not filled out or signed by any prison officials. Thus, it is unclear if or when prison officials received the Request.

immunity, *see Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 59 (1996). The Eleventh Circuit has specifically recognized that "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abrogated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990)). Accordingly, to the extent Plaintiff seeks monetary damages from Defendants in their official capacities, Defendants are entitled to sovereign immunity.[7] *See, e.g., Selensky v. Alabama*, 619 F. App'x 846, 849 (11th Cir. 2015); *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277–78 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from a state official sued in his official capacity).

### b.   Plaintiff's Statement of Facts (Doc. 1-1)

To the extent Plaintiff seeks to rely on the allegations made in his Statement of Facts (Doc. 1-1) in opposition to summary judgment, he is not entitled to do so. For the Court to properly consider those allegations at the summary judgment stage, they must be sworn or verified under penalty of perjury pursuant to 28 U.S.C. § 1746. *See McCaskill v. Ray*, 279 F. App'x 913, 915 (11th Cir. 2008) (holding that district court should not have considered unsworn and unverified allegation in deciding summary judgment). Plaintiff's Statement of Facts is

---

[7] Additionally, "neither a State nor its officials acting in their official capacities are 'persons' [subject to suit] under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Carr*, 916 F.2d at 1525 n.3 ("[S]tate officials acting in their official capacities are not 'persons' subject to liability under 42 U.S.C. § 1983."); *Dees v. Lamar*, Case No. 2:20-CV-1326-LSC-GMB, 2021 WL 1953137, at *5 (N.D. Ala. Mar. 4, 2021) ("Prison wardens and their officers, all of whom are employed by the Alabama Department of Corrections, are state officials[.]") (citing *Jacoby v. Thomas*, Case No. 18-14541-C, 2019 WL 5697879, at *1 (11th Cir. Oct. 16, 2019)).

neither sworn nor verified under penalty of perjury. Instead, it states only that the information "is true and correct to the best of [Plaintiff's] knowledge, information, and belief." Doc. 1-1 at 2. That language, absent an averment that the statement is made under penalty of perjury, is insufficient to satisfy § 1746. *See, e.g., Grupo Rayco C.A. v. Delta Air Lines, Inc.*, Case No. 1:20-CV-1952, 2021 WL 1351859, at *9 n.3 (N.D. Ga. Mar. 16, 2021) ("By omitting the requisite language stating that the certification was made 'under penalty of perjury,' counsel has failed to substantially comply with [§ 1746]."); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988) (noting that omission of the phrase "under penalty of perjury" would "allow[] the affiant to circumvent the penalties for perjury in signing onto intentional falsehoods").

Accordingly, the Court should not consider the Statement of Facts in making its summary judgment determination. However, because this Court extends lenient treatment to *pro se* litigants; because Plaintiff may have believed or intended his Statement of Facts to be properly verified under § 1746, particularly given that he references the Statement in his verified—but otherwise threadbare—Complaint (*see* Doc. 1 at 2); and because, most importantly, summary judgment is proper regardless of whether the Statement is considered, the Court will nevertheless address Plaintiff's unsworn and unverified allegations below. **The Court specifically notes, however, that neither Plaintiff's *pro se* status nor his subjective beliefs or intentions render the Statement of Facts properly verified; the Court will simply address the allegations as a courtesy to demonstrate that they do not change the outcome of this case.**

c.      **Excessive Force Claims**

To succeed on an Eighth Amendment excessive force claim, Plaintiff must satisfy both an objective and subjective inquiry. Specifically, he must demonstrate (1) "an objective injury 'sufficiently serious to constitute a denial of the minimal civilized measure of life's necessities'"; and (2) "'that the [responsible] official had a sufficiently culpable state of mind.'" *Sears v. Warden Okeechobee Corr. Inst.*, 762 F. App'x 910, 915 (11th Cir. 2019) (citing *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010)). "Both inquiries are contextual, and the objective harm inquiry is responsive to contemporary standards of decency." *Id*. "[N]ot every 'malevolent touch' by a prison guard amounts to excessive force." *Sears*, 762 F. App'x at 915 (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 37–38 (2010)). Rather, "a de minimis use of force is cognizable under the Eighth Amendment [only] if it is 'repugnant to the conscience of mankind.'" *Id*.; *see also Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (noting that, with respect to the objective component, a plaintiff must show that "the alleged wrongdoing [was] objectively harmful enough to establish a constitutional violation"). Although "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury," *Wilkins*, 559 U.S. at 38, "a plaintiff complaining about a given push or shove almost certainly fails to state a valid excessive force claim where no discernible injury occurs[.]" *Sears*, 762 F. App'x at 915.

As to the subjective inquiry, Plaintiff must demonstrate that force was applied "maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986) (citation omitted); *see also Hudson*, 503 U.S. at 8. To determine if an

application of force was applied maliciously and sadistically to cause harm, the Court considers the following five factors:

> (1) the extent of the injury, (2) the need for application of force, (3) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them, (4) the relationship between the need and the amount of force used, and (5) any efforts made to temper the severity of a forceful response.

*Hall v. Santa Rosa Corr. Inst.*, 403 F. App'x 479, 481 (11th Cir. 2010) (citing *Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir. 1999)). Under this analysis, summary judgment will be denied "only if the evidence viewed in the light most favorable to [Plaintiff] goes beyond a mere dispute over the reasonableness of the force used and will support a reliable inference of wantonness in the infliction of pain." *Brown v. Smith*, 813 F.2d 1187, 1188 (11th Cir. 1987).

Notably, although the Court must generally believe the evidence of the non-movant and draw all justifiable inferences in his favor, *Tipton*, 965 F.2d at 999, the Supreme Court has recognized that, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). The Eleventh Circuit has since explained that, while *Scott* should be applied narrowly, its reasoning is properly applied where there is "uncontroverted objective evidence rendering [Plaintiff's] account implausible." *Sears*, 762 F. App'x at 916–17 (reversing summary judgment on excessive force claim, but noting that "[i]f the medical records were unchallenged, the court would have been correct that they rendered his allegations implausible"). Additionally, "[a] court need not permit a case to go to a jury . . . when the

inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (quoting *Matsushita*, 475 U.S. at 592).

In this case, Plaintiff claims that Defendants Deason and King escorted him to the back gate at Red Eagle Honor Farm and assaulted him. Doc. 1 at 3. He claims the assault resulted in "injury that could be a life long issue causeing [sic] [him] mental issues along with physical issues." *Id*. He expands upon those allegations in his unverified Statement of Facts, alleging that Defendants "hit[] [him] in the back of [his] head along [the] liftside [sic] if [sic] [his] face for about a toll [sic] of 5 to 10 mins," causing him to "slid[e] down from the low chair" he was sitting in and causing the upper thigh of his right leg to "heart[] badlly [sic]." Doc. 1-1 at 1. In response to Defendants' Special Report, he briefly reiterates, without further detail or evidentiary support, that he "did get assulted [sic]" by Defendants. Doc. 57 at 5. However, the uncontroverted record evidence before the Court renders Plaintiff's version of events—that Defendants beat him in the head and face for at least five minutes in violation of his Eighth Amendment rights—implausible, as it demonstrates that the alleged assault did not result in any injury whatsoever to Plaintiff's head or face and that Plaintiff did not seek treatment for his purported thigh pain until more than eight months later.

As an initial matter, it is undisputed that the alleged assault did not cause *any* injury to Plaintiff's head or face. Not only does Plaintiff not allege any such injury, but the record evidence is completely devoid of any documents indicating such an injury or complaining of

such an injury.[8] Indeed, Plaintiff was transferred to Elmore Correctional Facility immediately following the alleged assault, and the undisputed medical screening he received upon arrival does not indicate that he reported any physical injury whatsoever, much less to his head and face. Doc. 48-5 at 149. Instead, it indicates that Plaintiff reported feeling "OK" and that he was alert and oriented to his surroundings and in no distress. *Id*. Additionally, a disciplinary hearing was held for Plaintiff at Elmore on August 31, 2018, during which Plaintiff did not mention an assault or any injury related to an assault—instead, he reiterated that the marks on his face from August 29 were caused by horseplaying with inmate Mangum. Doc. 48-1 at 15–16. Given the undisputed fact that Plaintiff suffered no injury to his head or face at the hands of Defendants, his unverified claim that he was hit in those areas for five to ten minutes is implausible.

Second, to the extent Plaintiff claims the alleged assault injured his right thigh when he slid down in the chair he was sitting in, the record also renders that claim implausible. Indeed, Plaintiff once again failed to mention any injury or pain to his thigh when he arrived at Elmore, and he did not mention his thigh at all until more than eight months later in the form of a partially completed sick call request on May 14, 2019. Doc. 1-8. Following that incomplete sick call request, he does not appear to have mentioned his thigh again until nearly four months later, on September 3, 2019, in another sick call request to Loxley Correctional Staff. Docs. 1-9; 48-5 at 133. Additionally, on October 21, 2019, Plaintiff told medical staff he had initially hurt his right leg while "walking . . . when [he] was in Loxley" (Doc. 48-5 at 119), not by being assaulted

---

[8] The evidence does demonstrate that some marks and "small scratches" were observed on Plaintiff's face earlier in the day on August 29, following his altercation with inmate Mangum. Docs. 48-1 at 2–4; 48-5 at 150. However, Plaintiff does not dispute that these marks existed prior to the alleged assault and were not caused by Defendants. *Id*. at 4, 7 (noting that he was horseplaying with inmate Mangum and hit his head in the restroom); Doc. 48-5 at 150 (same).

at Red Eagle Honor Farm. Given that Plaintiff did not tell medical personnel about his purported thigh injury when given the opportunity during his medical screening; that he instead waited at least eight and a half months—and possibly more than a year—after the alleged assault to bring it the attention of medical staff; and that, at one point, he reported that he injured his right leg at Loxley, rather than Red Eagle Honor Farm, his unverified claim that he injured his thigh during the alleged assault by Defendants—in which they purportedly hit him only in the head and face—is also implausible.

The Court is acutely cognizant that lack of injury is not, in itself, dispositive of an excessive force claim. *See Wilkins*, 559 U.S. at 38. However, in this particular set of circumstances, Plaintiff has made two unverified claims—that he was beaten in the head and face by two prison officials for a minimum of five minutes and injured his thigh as a result—that are not only unsubstantiated by the uncontroverted record evidence, but are, in some instances, belied by such evidence. It is simply implausible that an individual who was repeatedly beaten for that period of time in a particular area would suffer no discernible injury to that area. It is further implausible that the same individual would fail to report his injured leg to medical personnel—particularly when given a clear opportunity upon his arrival at Elmore—for more than eight months. Thus, this case goes beyond mere lack of injury; there is simply nothing in the record to support a finding that Defendants acted in a manner "repugnant to the conscience of mankind," *Sears*, 762 F. App'x at 915, or exhibited "wantonness in the infliction of pain." *Brown*, 813 F.2d at 1188.

In *Sears*, the Eleventh Circuit considered a case in which a plaintiff claimed he was assaulted by several officers over a period of 13 minutes. 762 F. App'x at 916–17. Relying on

medical records from after the incident, which did not demonstrate any visible injuries consistent with Plaintiff's story, the district court concluded that the plaintiff's story was implausible and granted summary judgment in favor of the officers. Although the Eleventh Circuit ultimately reversed summary judgment on the plaintiff's excessive force claims[9], it noted that "[i]f the medical records were unchallenged, the court would have been correct that they rendered [the plaintiff's] allegations implausible." *Id.* at 916.[10] Here, the medical records are unchallenged[11], and they—as well as Plaintiff's own allegations—render it implausible that Plaintiff was beaten for a minimum of five minutes in one specific area with no injuries, visible or otherwise, to that area.

Thus, based on the record before the Court, which renders Plaintiff's single, unsworn and unverified statement that Defendants hit him in the head and face for five to ten minutes implausible, there is simply no evidence demonstrating an Eighth Amendment violation occurred. A reasonable factfinder could not conclude, under these circumstances, that Defendants used force against Plaintiff that was "repugnant to the conscience of mankind," *Sears*, 762 F. App'x at 915, or that "support[s] a reliable inference of wantonness in the infliction

---

[9] The Court's decision was based on several factors that are not present here, including that (1) the plaintiff testified that one of the defendants did not allow the nurse to document his injuries following the alleged assault; (2) the nurse was employed at the same facility as the named defendants and thus shared an employment relationship with them; and (3) the medical evidence was not uncontroverted. *See Sears*, 762 F. App'x at 916–17.

[10] *See also Stanton v. Dunn*, Case No. 1:17-CV-102, 2020 WL 959246, at *12 (S.D. Ala. Feb. 27, 2020) ("If the[] medical records were unchallenged, the undersigned would no doubt declare [plaintiff's] allegations implausible.").

[11] Indeed, Plaintiff relies on his September 2019 medical records to demonstrate that he did in fact report a thigh injury more than a year after the alleged assault.

of pain," *Brown*, 813 F.2d at 1188. Accordingly, Defendants Deason and King are entitled to summary judgment on Plaintiff's excessive force claims.

    **d.**    **Failure to Intervene Claim**

To the extent Plaintiff purports to claim that Defendant Franklin failed to intervene during the alleged assault, his claim fails. Although a prison guard may be held liable under § 1983 if he fails to take reasonable steps to intervene when other guards use excessive force upon an inmate, *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008), without a valid underlying claim of excessive force, Defendant Franklin cannot be held liable for failing to intervene, *Carson v. Sharpe*, Case No. 316-092, 2017 WL 9482511, at *2 (S.D. Ga. Jan 25, 2017). "Plainly, an officer cannot be liable for failing to stop or intervene when there was no constitutional violation being committed." *Sebastian v. Ortiz*, 918 F.3d 1301, 1312 (11th Cir. 2019) (citations omitted); *see also Raulerson v. Baily*, Case No. 1:08-CV-222, 2014 WL 4928904, at *3 n. 2 (N.D. Fla. Oct. 1, 2014) ("By its nature, a claim of failure to intervene must include an underlying act of excessive force."). Accordingly, because a failure to intervene claim is "wholly dependent on the underlying excessive force claim," *Sebastian*, 918 F.3d at 1312, and because, as discussed above, Defendants Deason and King are entitled to summary judgment on Plaintiff's excessive force claims, Defendant Franklin is entitled to summary judgment on Plaintiff's failure to intervene claim.[12]

---

[12] As an additional ground for dismissal, the Court notes that Plaintiff's verified Complaint wholly fails to allege that Defendant Franklin even witnessed the assault. *See* Doc. 1 at 3. It is only in his unverified Statement of Facts that he claims Defendant Franklin "observed the insident [sic]." Doc. 1-1 at 1.

e.      **Denied Medical Care Claim**

To prevail on his claim that Defendant Franklin refused to provide him with medical treatment following the alleged assault, Plaintiff must prove that he had an objectively serious medical need and that Defendant acted with deliberate indifference to that need. *Bozeman v. Orum*, 422 F.3d 1265, 1271 (11th Cir. 2005). An objectively serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). Additionally, the medical need must be one that "objectively 'posed a substantial risk of serious harm' if left untreated." *Barcelona v. Parish*, 750 F. App'x 841, 844 (11th Cir. 2018) (quoting *Gilmore v. Hodges*, 738 F.3d 266, 274 (11th Cir. 2013)).

Plaintiff has wholly failed to demonstrate that he had an objectively serious medical need of which Defendant Franklin was aware. As to his verified Complaint, he claims only that he "received [an unidentified] injury that could be a life long issue causeing [him] mental issues along with physical issues." Doc. 1 at 3. That claim is far too vague and conclusory to make the requisite demonstration, as it does not identify any specific injury Plaintiff may have suffered, much less one that is objectively serious, and it does not indicate that Defendant Franklin knew of any injury. Additionally, the medical records do not contain any indication of a lifelong mental or physical issue resulting from the alleged assault.

As to his unverified allegation that his upper thigh "heart[] badlly [sic]," Plaintiff has not demonstrated that his thigh was either diagnosed by a physician as mandating treatment or was obviously in need of a doctor's attention. As noted above, medical personnel at Elmore, who

screened Plaintiff upon his arrival, did not note any injury to Plaintiff's thigh; Plaintiff did not

tell medical personnel that his thigh hurt at that time, instead indicating that he was "OK"; and he

did not follow up on his purported thigh injury until more than eight months later. Additionally,

Plaintiff has not shown that his thigh posed a substantial risk of serious harm about which

Defendant Franklin knew. Indeed, once Plaintiff alerted medical personnel to a purported issue

with his thigh in September 2019, he denied having any pain, his gait was steady, and it was

treated conservatively with an ACE bandage. Doc. 48-5 at 102.

Accordingly, because Plaintiff has failed to demonstrate an objectively serious medical

need to which Defendant Franklin was deliberately indifferent, Defendant Franklin is entitled to

summary judgment on Plaintiff's denied medical care claim.

### f.    Failure to Investigate Claims

Finally, Plaintiff claims that, after his transfer to Elmore, Defendants Hudson and McKee

failed to investigate his report of excessive force and failed to follow procedures regarding his

report of the incident. He claims this failure violated his rights under the Eighth Amendment.

However, the Court concludes that this claim does not amount to an Eighth Amendment

violation, as "failure to follow procedures does not, by itself, rise to the level of deliberate

indifference because doing so is at most a form of negligence." *Taylor v. Adams*, 221 F.3d 1254,

1259 (11th Cir. 2000); *see also Losey v. Warden*, 521 F. App'x 717, 719–20 (11th Cir. 2013)

(holding prisoner's allegation that two correctional officers failed to follow procedures regarding

official count of inmates and thereby failed to protect him from assault by a fellow inmate did

not rise to the level of deliberate indifference and instead was, at most, a form of negligence);

*Whitley*, 475 U.S. at 319 (finding that a violation of the Eighth Amendment must involve "more than ordinary lack of due care for the prisoner's . . . safety").

Likewise, to the extent Plaintiff attempts to state a claim under the Fourteenth Amendment, that claim must fail because "inmates do not enjoy a constitutional right to an investigation of any kind by government officials." *Banks v. Annucci*, 48 F. Supp. 3d, 394, 414 (N.D.N.Y. 2014).[13] "[T]he Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989). And, while § 1983 "provides a mechanism for enforcing a right or benefit established elsewhere," it does not create a federal right or benefit. *Morris-Hayes v. Bd. of Educ. of Chester Union Free Sch. Dist.*, 423 F.3d 153, 159 (2d Cir. 2005) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

Accordingly, Defendants Hudson and McKee are entitled to summary judgment on Plaintiff's failure to investigate claims.

## V.   CONCLUSION

Accordingly, for the reasons set forth above, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The Alabama Department of Corrections be DISMISSED as a party to this action;

---

[13] Moreover, the Eleventh Circuit has joined other Circuits in holding "that a prisoner does not have a constitutionally-protected liberty interest in an inmate grievance procedure." *Dunn v. Martin*, 178 F. App'x 876, 878 (11th Cir. 2006); *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) ("A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate."). "Simply put, a prison official's failure to timely process a grievance form, investigate it, or otherwise respond to a grievance is not actionable under § 1983." *Wromas v. Cruz*, Case No. 2:17-CV-155, 2018 WL 2318038, at *2 (M.D. Fla. May 22, 2018).

2. Defendants' motion for summary judgment be GRANTED on Plaintiff's claims for monetary damages against all Defendants in their official capacities;

3. Defendants' motion for summary judgment be GRANTED on Plaintiff's excessive force claims against Defendant Officers Cody Deason and Curtis King;

4. Defendants' motion for summary judgment be GRANTED on Plaintiff's failure to intervene and denied medical care claims against Defendant Officer Craig Franklin;

5. Defendants' motion for summary judgment be GRANTED on Plaintiff's failure to investigate claims against Defendant Officers Captain Charles McKee and Sgt. Latreshia Hudson; and

6. This action be DISMISSED in its entirety.

On or before **February 28, 2023**, the parties may file objections to this Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made. Frivolous, conclusive, or general objections will not be considered.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11th Cir. R. 3-1; *see Resol. Tr. Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 14th day of February, 2023.


/s/ Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE